# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 15-cv-9284<br><br>Judge Robert M. Dow, Jr. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| P.S. COYOTE PLUMBING ENTERPRISE, INC., an Illinois Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Laborers' District Council Retiree Health and Welfare Fund (collectively, the "Funds"), and James S. Jorgensen, Administrator of the Funds (collectively with the Funds, "Plaintiffs") brought suit against Defendant PS Coyote Plumbing Enterprise, Inc. ("Defendant") for liability under the Employee Retirement Income Security Act ("ERISA"). Before the Court is Plaintiffs' motion for summary judgment [25], to which Defendant has failed to respond. For the reasons stated below, the Court grants Plaintiffs' motion [25]. Judgment will be entered in favor of Plaintiffs against Defendant in the aggregate amount of $134,432.21.

**I.  Background**

The Court takes the relevant facts from Plaintiffs' Local Rule 56.1 Statement of Material Facts [27] and supporting exhibits [28]. Defendant did not respond to Plaintiffs' motion or Statement of Material Facts.[1] Therefore, pursuant to Local Rule 56.1(b)(3)(C), Plaintiffs' fact statements are deemed admitted. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); see also *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *De v. City of Chicago*, 912 F. Supp. 2d 709, 712-13 (N.D. Ill. 2012).

The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. § 1002(3), (37)(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the Labor Relations Management Act ("LMRA"). 29 U.S.C. § 186(c)(5).

James S. Jorgensen ("Jorgensen") has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgenson is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

---

[1] Pursuant to the briefing schedule entered by the Court, Defendant's response was due July 8, 2016. See [24].

Defendant is an Illinois corporation and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Defendant have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2013 (the "Agreement").

The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Midwest Construction Industry Advancement Fund ("MCIAF"), and the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO") to act as agents in the collection of contributions due to those funds.

The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Defendant to make contributions on behalf of its employees covered by the Agreement, and to submit monthly remittance reports in which Defendant identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee. The Agreement and the Funds' respective Agreements and Declarations of Trust, to which Defendant is bound, require Defendant to submit benefit and union dues reports and contribution payments by the tenth day of the following month. Benefits contributions which are not received within thirty days of this date are assessed liquidated damages in the amount of 20 percent of the principal amount of delinquent contributions, and interest at a rate of 12 percent from the date of delinquency forward. Dues contributions which are not received by

the tenth day of the following month are assessed liquidated damages in the amount of 10 percent of the principal amount of delinquent contributions.

The Agreement and the Funds' respective Agreements and Declarations of Trust also require Defendant to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

An audit of Defendant's books and records for the time period of March 1, 2010 through April 30, 2013 (the "First Audit") revealed that Defendant performed covered work during the First Audit period, but that notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Defendant:

(a) failed to report and pay contributions in the amount of $24,591.00 owed to Plaintiff Laborers' Pension Fund for the audit period of March 1, 2010 through April 30, 2013, thereby depriving the Laborers' Pension Fund of contributions, income, and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $31,703.00 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of March 1, 2010 through April 30, 2013, thereby depriving the Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $1,310.60 owed to the Laborers' Training Fund for the audit period of March 1, 2010 through April 30, 2013, thereby depriving the Training Fund of contributions, income, and information needed to

administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d) failed to report and pay contributions in the amount of $58.08 owed to the LDCLMCC for the audit period of March 1, 2010 through April 30, 2013, thereby depriving the LDCLMCC of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(e) failed to report and pay contributions in the amount of $198.10 owed to the MCIAF for the audit period of March 1, 2010 through April 30, 2013, thereby depriving the MCIAF of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f) failed to report and pay contributions in the amount of $33.88 owed to the LECET for the audit period of March 1, 2010 through April 30, 2013, thereby depriving LECET of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g) failed to report and pay contributions in the amount of $28.30 owed to CISCO for the audit period of March 1, 2010 through April 30, 2013, thereby depriving CISCO of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Defendant owes liquidated damages plus interest on all unpaid contributions and paid late contributions revealed by the audit for the period of March 1, 2010 through April 30, 2013.

Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Defendant is also liable for the costs of any audit which reveals unpaid contributions. Accordingly, Defendant owes the Funds $1,071.97 in audit costs for the audit for the period of March 1, 2010 through April 30, 2013.

Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees. Defendant performed covered work during the First Audit period, and failed to withhold and/or submit payment of $582.24 in union dues that were or should have been withheld from the wages of employees for the period of March 1, 2010 through April 30, 2013. Pursuant to the Agreement, Defendant owes liquidated damages on all paid late or unpaid dues as revealed by the audit for the period of March 1, 2010 through April 30, 2013, plus audit costs, and reasonable attorneys' fees and costs as the Union's collection agent.

An audit of Defendant's books and records for the time period of May 1, 2013 through June 30, 2015 (the "Second Audit") revealed that Defendant performed covered work during the Second Audit period, but that notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Defendant:

(a) failed to report and pay contributions in the amount of $3,400.32 owed to Plaintiff Laborers' Pension Fund for the audit period of May 1, 2013 through June 30, 2015, thereby depriving the Laborers' Pension Fund of contributions, income, and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $3,353.28 owed to Plaintiff Laborers' Welfare Fund for the audit period of May 1, 2013 through June 30, 2015, thereby depriving the Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $1,276.80 owed to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the audit period of May 1, 2013 through June 30, 2015, thereby depriving the Retiree Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries.

(d) failed to report and pay contributions in the amount of $168.00 owed to the Laborers' Training Fund for the audit period of May 1, 2013 through June 30, 2015, thereby depriving the Training Fund of contributions, income, and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e) failed to report and pay contributions in the amount of $40.32 owed to the LDCLMCC for the audit period of May 1, 2013 through June 30, 2015, thereby depriving the LDCLMCC of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f) failed to report and pay contributions in the amount of $23.52 owed to the MCIAF for the audit period of May 1, 2013 through June 30, 2015, thereby depriving the MCIAF of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(g) failed to report and pay contributions in the amount of $23.52 owed to LECET for the audit period of May 1, 2013 through June 30, 2015, thereby depriving LECET of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(h) failed to report and pay contributions in the amount of $3.36 owed to CISCO for the audit period of May 1, 2013 through June 30, 2015, thereby depriving CISCO of contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Defendant owes liquidated damages plus interest on all unpaid contributions and paid late contributions revealed by the audit for the period of May 1, 2013 through June 30, 2015.

Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Defendant is liable for the costs of any audit which reveals unpaid contributions. Accordingly, Defendant owes the Funds $1,415.15 in audit costs for the audit for the period of May 1, 2013 through June 30, 2015.

Defendant performed covered work during the Second Audit period, and failed to withhold and/or submit payment of $414.96 in union dues that were or should have been withheld from the wages of employees for the period of May 1, 2013 through June 30, 2015.

Pursuant to the Agreement, Defendant owes liquidated damages on all late paid or unpaid dues as revealed by the audit for the period of May 1, 2013 through June 30, 2015, plus audit costs and reasonable attorneys' fees and costs as the Union's collection agent. The Funds have incurred a total of $7,689.00 in attorneys' fees and costs as a result of this litigation.

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

When an ERISA fund moves for summary judgment, and the "employer keeps substandard records," the Court presumes "that the auditor's calculations are correct" and the burden shifts to the employer to prove that they are not. *Chicago Dist. Council of Carpenters*

*Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003); see also *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 738-39 (7th Cir. 2004).

**III.    Analysis**

Pursuant to ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When a fiduciary, acting on behalf of a plan, prevails in an action to enforce the employer's statutory duty under ERISA, the Court "shall" award the plan: a) the unpaid contributions; b) interest on the unpaid contributions; c) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not to exceed 20 percent of the unpaid contributions; d) reasonable attorneys' fees and costs of the action; and e) any other legal or equitable relief that the court deems appropriate. 29 U.S.C. § 1132(g)(2); see also *Laborers' Pension Fund*, 377 F.3d at 739. The Seventh Circuit has construed "such other legal or equitable relief as the court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), to include an award of audit costs. See *Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust, & the Teamsters Local Union No. 727 Health & Welfare Trust v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005).

In this case, there is no dispute that Defendant is party to a collective bargaining agreement with the Union, the Agreement, which obligates Defendant to submit reports and contributions to the Funds on behalf of its employees who are covered by the collective bargaining agreement. There also is no dispute that, pursuant to the Agreement, any benefits contributions not timely reported to the Funds are assessed liquidated damages at a rate of 20

percent and interest at a rate of 12 percent, and that any dues contributions not timely reported to the Funds, as the Union's collection agent, are assessed liquidated damages at a rate of 10 percent.

Defendant, in failing to respond to Plaintiffs' motion for summary judgment, has also failed to produce any records of the unpaid contributions, interest, liquidated damages, and any other amounts that it owes to the Funds. Therefore, the Court will presume that the unrebutted calculations provided by Plaintiffs' auditor are correct. See *Chicago Dist. Council of Carpenters Pension Fund*, 347 F.3d at 264; *Laborer's Pension Fund*, 377 F.3d at 738-39. As set forth in more detail in the background section above, Plaintiffs' First Audit shows that Defendant owe the following amounts to the Funds for the period of March 1, 2010 through April 30, 2013:

> Welfare Fund unpaid contributions: $31,703.00
> Liquidated Damages on Welfare Fund unpaid contributions: $6,340.60
> Interest on Welfare Fund unpaid contributions: $19,867.26
> Pension Fund unpaid contributions: $24,591.00
> Liquidated Damages on Pension Fund unpaid contributions: $4,918.20
> Interest on Pension Fund unpaid contributions: $15,652.38
> Training Fund unpaid contributions: $1,310.60
> Liquidated Damages on Training Fund unpaid contributions: $262.12
> Interest on Training Fund unpaid contributions: $829.07
> Dues Fund unpaid contributions: $582.24
> Liquidated Damages on Dues Fund unpaid contributions: $58.22
> Accumulated Liquidated Damages on Dues Fund unpaid contributions for previously late-paid dues: $143.73
> LDCLMCC unpaid contributions: $58.08
> Liquidated Damages on LDCLMCC unpaid contributions: $5.81
> Interest on LDCLMCC unpaid contributions: $15.36
> MCIAF unpaid contributions: $198.10
> Liquidated Damages on MCIAF unpaid contributions: $39.62
> Interest on MCIAF unpaid contributions: $126.81
> LECET unpaid contributions: $33.88
> Liquidated Damages on LECET unpaid contributions: $3.39
> Interest on LECET unpaid contributions: $8.96
> CISCO unpaid contributions: $28.30
> Liquidated Damages on CISCO unpaid contributions: $5.66
> Interest on CISCO unpaid contributions: $18.12
> Audit Costs for First Audit: $1,071.97

TOTAL: $107,872.48

Plaintiff's Second Audit shows that Defendant owes the following additional amounts to the Funds for the period of May 1, 2013 through June 30, 2015:

> Welfare Fund unpaid contributions: $3,353.28
> Liquidated Damages on Welfare Fund unpaid contributions: $670.66
> Interest on Welfare Fund unpaid contributions: $51.65
> Pension Fund unpaid contributions: $3400.32
> Liquidated Damages on Pension Fund unpaid contributions: $680.06
> Interest on Pension Fund unpaid contributions: $52.37
> Training Fund unpaid contributions: $168.00
> Liquidated Damages on Training Fund unpaid contributions: $33.60
> Interest on Training Fund unpaid contributions: $2.59
> Dues Fund unpaid contributions: $414.96
> Liquidated Damages on Dues Fund unpaid contributions: $41.50
> LDCLMCC unpaid contributions: $40.32
> Liquidated Damages on LDCLMCC unpaid contributions: $4.03
> Interest on LDCLMCC unpaid contributions: $0.62
> MCIAF unpaid contributions: $23.52
> Liquidated Damages on MCIAF unpaid contributions: $4.70
> Interest on MCIAF unpaid contributions: $0.36
> LECET unpaid contributions: $23.52
> Liquidated Damages on LECET unpaid contributions: $2.35
> Interest on LECET unpaid contributions: $0.36
> CISCO unpaid contributions: $3.36
> Liquidated Damages on CISCO unpaid contributions: $0.67
> Interest on CISCO unpaid contributions: $0.05
> Retiree Welfare Fund unpaid contributions: $1,276.80
> Liquidated Damages on Retiree Welfare Fund unpaid contributions: $255.36
> Interest on Retiree Welfare Fund unpaid contributions: $19.66
> Accumulated Liquidated Damages for late-paid benefits reports for December 2011, May through September 2012, November and December 2012, October and November 2015, and January 2016: $6,930.91
> Audit Costs for Second Audit: $1,415.15
> TOTAL: $18,870.73

ERISA entitles Plaintiffs to an award of these amounts, which consist of unpaid contributions, interest, liquidated damages not exceeding 20 percent of the unpaid contributions, and audit costs. See 29 U.S.C. § 1132(g)(2); *Moriarty*, 429 F.3d at 721. Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(d).

Plaintiffs have submitted unrebutted evidence that they incurred reasonable attorneys' fees and costs in the amount of $7,689.00.  Therefore, the Court will include these fees and costs in the aggregate damages awarded to Plaintiffs.

## IV.     Conclusion

For the reasons stated above, the Court grants Plaintiffs' motion for summary judgment [25].  Judgment will be entered in favor of Plaintiffs and against Defendant in the aggregate amount of $134,432.21.


Dated: December 19, 2016

Robert M. Dow, Jr.
United States District Judge